UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SERGIO TAMAYO,

          Plaintiff,

   v.

J. GARCIA, et al.,

          Defendants.

Case No. 23-cv-01749-VKD

**ORDER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A; GRANTING LEAVE TO AMEND**

     Pro se plaintiff Sergio Tamayo, a state prisoner, filed a complaint asserting claims for violations of his constitutional rights under 42 U.S.C. § 1983 against several correctional officers at the Pelican Bay State Prison ("PBSP"). Dkt. No. 7. Mr. Tamayo's motion for leave to proceed *in forma pauperis* has already been granted. Dkt. Nos. 3, 13.

**I.    BACKGROUND**

     The following facts are based on the allegations in Mr. Tamayo's complaint.

     Mr. Tamayo is currently confined at High Desert State Prison. Dkt. No. 7 at 4 ¶ 1. He was previously incarcerated at PBSP. *Id.* at 5 ¶ 5. According to Mr. Tamayo's complaint, on February 17, 2022, defendant J. Garcia began "taunting/harassing" him, and "intentionally and aggressively" searched him. *Id.* at 7 ¶ 22. Then, on February 20, 2022, defendant K. Hood began to antagonize Mr. Tamayo. *Id.* at 8 ¶ 23. On February 26, 2022, defendant J. Romero, citing only Mr. Tamayo's "run-ins" with other correctional officers, refused to allow Mr. Tamayo to go to guitar lessons. *Id.* at 8 ¶ 24. On March 4, 2022, defendant A. Maylin was inexplicably rude and verbally insulted Mr. Tamayo with derogatory words. *Id.* at 8 ¶ 25. Mr. Tamayo was subjected to

"continuous harassment" by correctional officers until March 21, 2022.[1]  *Id.* at 8 ¶ 26.

On the morning of March 21, 2022, defendant S. Maldonado unlocked the tray slot of Mr. Tamayo's cell and told him that S. Maldonado would "be there when his fellow co-workers took [Mr. Tamayo] down."  *Id.* at 8 ¶ 27.  When Mr. Tamayo asked what he meant, S. Maldonado "smiled at [him] mischievously and said, 'You'll see.'"  *Id.*  Later that morning during yard release, Mr. Tamayo was made to walk through a metal detector three times by A. Maylin, which Mr. Tamayo describes as "harassing."  *Id.* at 9 ¶ 28.  After clearing the metal detector, a check point, a clothed body inspection, and inspection of his inmate identification card, Mr. Tamayo walked towards the prison yard.  *Id.* at 9 ¶¶ 29, 30.  However, J. Garcia yelled for Mr. Tamayo to come back and demanded that Mr. Tamayo take off his shoes for inspection.  *Id.* at 9 ¶ 31.  Mr. Tamayo complied.  *Id.*

As Mr. Tamayo handed J. Garcia his right shoe with his right hand, J. Garcia grabbed Mr. Tamayo's right wrist in an aggressive manner and pressed his personal alarm.  *Id.* at 9 ¶ 32.  J. Garcia then flung Mr. Tamayo to the ground, and J. Romero struck and punched Mr. Tamayo on the back of his head multiple times.  *Id.* at 10 ¶ 33.  While Mr. Tamayo was in a prone position, numerous correctional officers began to knee Mr. Tamayo at the back of his neck "to purposefully cut [his] breathing."  *Id.* at 10 ¶ 34.  While this was happening, Mr. Tamayo was also being choked by J. Garcia.  *Id.*  A. Maylin and K. Hood kneed Mr. Tamayo on the right and left side of his ribs while yelling obscenities "to further incite aggression amongst [the correctional officers] involved."  *Id.* at 10 ¶ 35.  Mr. Tamayo "was at all times saying he could not breath[e] in [the] proned-out position."  *Id.*  The officers continued to encourage one another to knee, kick, punch, and choke Mr. Tamayo, while other officers in the area made no effort to intervene.  *Id.*  Mr. Tamayo suffered injuries to his body and face, including cuts, scrapes, a bloody nose, and redness and swelling in the facial area.  *Id.* at 10 ¶ 37; *id.* at 54.

---

[1] Mr. Tamayo alleges that other prisoners who were housed in PBSP's "A-Yard" have also suffered harassment and have been subjected to "unjustified physical force" by prison staff in retaliation for filing grievances and engaging in other protected conduct.  Dkt. No. 7 at 6-7 ¶¶ 17-21.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

After Mr. Tamayo was cuffed he was escorted to the hobby shop at the prison, where he observed correctional officers Garcia, Romero, Hood, Maylin and others meeting with defendant S. Burris, a lieutenant. *Id.* at 10 ¶ 36. S. Burris then informed Mr. Tamayo that he would be placed in administrative segregation for an "alleged staff assault." *Id.* Mr. Tamayo contends that the allegations that he committed a "staff assault" were "fabricated by all said correctional officers." *Id.*

L. Cambria was assigned as Mr. Tamayo's investigative employee. *Id.* at 11 ¶ 41. Mr. Tamayo alleges that L. Cambria failed to properly investigate the allegations against him and was biased against him. *Id.* He alleges that video footage of the March 21, 2022 incident was improperly withheld, and that the officers who were involved in the incident coordinated with each other in preparing false reports against Mr. Tamayo and in covering up their own misconduct. *Id.* at 11-12 ¶¶ 42, 43.

On July 5, 2022, Lt. J. Frisk found Mt. Tamayo guilty of the "staff assault" offense. *Id.* at 11 ¶ 42. Mr. Tamayo claims that J. Frisk relied solely on false incident reports prepared by the officers involved and did not consider any exculpatory evidence from Mr. Tamayo or other sources, including video footage. *Id.* at 12 ¶¶ 44-46. As a result of the guilty finding, PBSP took disciplinary action against Mr. Tamayo. He lost 150 days of good-time credit and 90 days of phone and package privileges. *Id.* at 66.

On July 11, 2022, Mr. Tamayo filed a grievance (Log No. 277867) alleging that correctional officers used excessive force against him and challenging the related disciplinary action. *Id.* at 11 ¶ 39; *id.* at 18. He asked that the guilty finding be overturned and that he be removed from segregation. *Id.* at 11 ¶ 39; *id.* at 19-21. Mr. Tamayo filed a separate grievance (Log No. 281744) on July 18, 2022, alleging due process violations during the disciplinary proceedings. *Id.* at 26-27. According to the exhibits attached to Mr. Tamayo's complaint, the grievance identified as Log No. 277867 was treated as two distinct claims. PBSP denied the claim challenging the disciplinary action on August 18, 2022, and notified Mr. Tamayo that the claim alleging staff misconduct and use of excessive force would be handled separately. *Id.* at 28-29. Subsequently, on February 23, 2023, PBSP advised Mr. Tamayo that the allegation of staff

United States District Court
Northern District of California

misconduct was "not sustained." *Id.* at 68.  The decision denying Mr. Tamayo's challenge to the disciplinary action directed Mr. Tamayo to pursue an appeal to the second level if he was dissatisfied with the response. *Id.* at 29.  Mr. Tamayo states that he exhausted the grievance identified as Log No. 277867 to the last level. *Id.* at 2.

Mr. Tamayo asserts several claims for relief under 42 U.S.C. § 1983 for violations of his rights under the First, Eighth and Fourteenth Amendments.  Specifically, he claims that defendants used excessive force against him on March 21, 2022 and harassed him in the months preceding that date; retaliated against him for filing grievances and engaging in other protected conduct; and deprived him of due process protections during the investigation of the incident on March 21, 2022 and in the disciplinary proceedings that followed. *Id.* at 13-15 ¶¶ 47-55.  He seeks a declaration that defendants violated his constitutional rights, an injunction against defendants' future use of unnecessary force and retaliation, compensatory damages, punitive damages, nominal damages, and other relief. *Id.* at 15-16 ¶¶ 58-64.

## II.   STANDARD OF REVIEW

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  A court must dismiss a case filed without the payment of the filing fee whenever it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  In conducting its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2).  Pro se pleadings must be liberally construed, particularly in civil rights cases. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v.*

United States District Court
Northern District of California

*Atkins*, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

Mr. Tamayo may have plausible claims for relief under § 1983 based on his allegations of retaliation, use of excessive force, and deprivation of due process. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (Eighth Amendment excessive force claim shown when was force applied maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline); *Wolff v. McDonnell*, 418 U.S. 539, 556, 564-570 (1974) (prisoners retain right to due process in the form of five procedural protections, subject to the restrictions imposed by the nature of the penal system).  However, given the allegations in the complaint, some or all of these claims appear to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that if a state prisoner's complaint seeks damages based on claims that would "necessarily imply the invalidity" of their underlying conviction or sentence, the prisoner may not pursue claims under § 1983, unless the conviction or sentence was reversed, expunged or called into question by issuance of a writ of habeas corpus.  512 U.S. at 486-87; *see Cunningham v. Gates*, 312 F.3d 1148, 1153 (9th Cir. 2002).  *Heck* extends to prison disciplinary actions.  For example, if a prisoner's § 1983 claim necessarily implies the invalidity of a disciplinary hearing and the resulting deprivation of good-time credits, such a claim is barred by *Heck*.  *Nettles v. Grounds*, 830 F.3d 922, 928-29 (9th Cir. 2016) (citing *Edwards v. Balisok*, 520 U.S. 641, 644 (1997)).  Conversely, if the § 1983 claim does not "raise any implication about the validity" of the disciplinary decision or affect the duration of his incarceration, the claim is not barred by *Heck*.  *Id.* at 929 (quoting *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004)).

A petition for writ of habeas corpus is the "exclusive remedy" for a prisoner who seeks "'immediate or speedier release'" from confinement.  *Skinner v. Switzer*, 562 U.S. 521, 5 (2011)

United States District Court
Northern District of California

(quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *see Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *Edwards*, 520 U.S. at 648; *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  A challenge to a disciplinary finding that resulted in assessment of time credits must be brought in habeas if reinstatement of the time credits would "necessarily spell speedier release."  *Skinner*, 562 U.S. at 525.

While Mr. Tamayo does not directly challenge his disciplinary finding for "staff assault" or seek restoration of the good-time credits he lost as a result of the disciplinary action, his claims for relief appear to depend on a finding that the "staff assault" charge was based on fabricated reports by the defendant officers.  Specifically, Mr. Tamayo alleges that defendants' use of force against him was unprovoked and, therefore, unreasonable.  Dkt. No. 7 at 9-10 ¶¶ 31-33.  He also alleges that defendants used force in retaliation for his protected conduct (although the nature of the protected conduct is not described).  *See id.* at 8 ¶ 26.  And finally, he alleges that he was found guilty of "staff assault" because the officer investigating the offense did not obtain exculpatory evidence, and the officer conducting the hearing improperly relied on false reports and failed to consider exculpatory evidence.  *Id.* at 11-12 ¶¶ 41-46.  Mr. Tamayo's claims, if successful, would necessarily demonstrate the invalidity of the disciplinary finding and the resulting loss of good-time credits—i.e., the duration of his confinement.  *See Nettles*, 830 F.3d at 927.  Unless Mr. Tamayo has already obtained a reversal of the disciplinary finding and had his good-time credits restored, he may not proceed with such claims under § 1983, but must instead file a petition for a writ of habeas corpus.  *See Skinner*, 562 U.S. at 525.

However, because it is not entirely clear whether Mr. Tamayo can state any claims under § 1983 that neither demonstrate nor necessarily imply the invalidity of the disciplinary finding against hm or the resulting loss of good-time credits, the Court grants Mr. Tamayo leave to amend his complaint.  *See, e.g., Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (finding that a conviction for resisting a peace officer under Cal. Penal Code § 148(a) did not bar § 1983 claim for use of excessive force where conviction and § 1983 claim were "based on different actions during one continuous transaction").

**IV.    CONCLUSION**

After screening the complaint pursuant to 28 U.S.C. § 1915A, the Court finds that Mr. Tamayo's claims as presently stated appear to be barred by the rule of *Heck v. Humphrey*, although the basis for each claim is not entirely clear.  Mr. Tamayo may file an amended complaint if he is able to state claims for relief under 42 U.S.C. § 1983 that challenge the circumstances of his confinement and are not *Heck*-barred.  An amended complaint must be filed no later than **October 23, 2023**.  The amended complaint must include the caption and civil case number used in this order, Case No. 23-cv-01749 VKD, and the words "AMENDED COMPLAINT" on the first page.  If using the court form complaint, Mr. Tamayo must answer all the questions on the form in order for the action to proceed.

Mr. Tamayo is advised that the amended complaint will supersede the original complaint, the latter being treated thereafter as non-existent.  *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Consequently, claims not included in an amended complaint are no longer claims and defendants not named in an amended complaint are no longer defendants.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

If Mr. Tamayo fails to file an amended complaint in time, or if the amended complaint fails to cure all defects described above, the Court may issue an order reassigning the case to a district judge with a recommendation that the complaint be dismissed without prejudice to Mr. Tamayo's ability to file a petition for writ of habeas corpus.  *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 586 (9th Cir. 1995).

The Clerk of the Court shall include two copies of the Court's form complaint with a copy of this order to Mr. Tamayo.

**IT IS SO ORDERED.**

Dated: September 22, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge