ROB BONTA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
State Bar No. 209542
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone: (415) 510-3611
  Fax: (415) 703-5843
  E-mail:  Michael.Quinn@doj.ca.gov
*Attorneys for Defendants Garcia, Maylin, Romero,
Hood, Maldonado, and Wallace*

Glenn Katon (SBN 281841)
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
T: (510) 463-3350
F: (510) 463-3349
gkaton@katon.law

**ATTORNEY FOR PLAINTIFF
SERGIO TAMAYO**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **SERGIO TAMAYO,**<br><br>Plaintiff,<br><br>v.<br><br>**J. GARCIA, et al.,**<br><br>Defendants. | 5:23-cv-01749-NW<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Date:     August 4, 2026<br>Time:     9:00 a.m.<br>Dept:     Via Zoom Meeting<br>Judge:    The Honorable Noël Wise<br>Trial Date:   None Set<br>Action Filed: 4/12/2023 |

1

The parties file this Joint Case Management Statement pursuant to Local Rule 16-9(a), the Standing Order for All Judges of the Northern District of California, and the April 27, 2026 Clerk's Notice Setting Further Case Management Conference (ECF 56):

## I.    JURISDICTION AND SERVICE

The Court has federal question jurisdiction under 28 U.S.C. § 1331 for this claim under 42 U.S.C. § 1983.  Venue is proper in this District because a substantial part of the events giving rise to Plaintiff's claim occurred at Pelican Bay State Prison, which is within the territorial boundaries of the District.  Defendants have been served.

## II.    FACTS

### A.    Plaintiff's Statement.

Plaintiff Sergio Tamayo is an ADA-designated state prisoner who, as a result of a 2007 shotgun blast to his face, shoulder, and neck, is blind in his right eye, has only narrow tunnel vision with no peripheral vision in his left eye, and has documented memory loss. At the time of the Plaintiff's injuries alleged in the First Amended Complaint, Plaintiff was housed at Pelican Bay State Prison, Level 4, A-Yard. On March 21, 2022, at approximately 8:19 a.m. on Pelican Bay A-Yard, Plaintiff passed through the metal detector multiple times without triggering an alarm. Defendant Correctional Officer J. Garcia then conducted an aggressive pat-down using a stick, yanked Plaintiff's identification, demanded his boots, grabbed his hand, and threw him to the floor. While Plaintiff was on the ground attempting to comply, officers held his arms, put a knee on his neck, and struck him on the head. Plaintiff repeatedly told the officers he could not breathe, but they did not stop. Plaintiff alleges that Garcia leaned on and punched his back; Romero punched Plaintiff and applied a knee to his neck; Maylin punched Plaintiff and leaned on his back and ribs; Maldonado grabbed Plaintiff's legs; Hood applied handcuffs and held Plaintiff down; and Wallace also held Plaintiff down.

The CDCR 7219 injury form documented a facial scrape, blood on Plaintiff's face, leg cuts, and a hand cut. Plaintiff also sustained bumps to his head and neck, an injured throat that interfered with swallowing, and rib pain preventing him from lying on his right side. Plaintiff's vision has worsened since the incident. Plaintiff exhausted administrative remedies as to his

2

excessive-force claim through CDCR 602 Grievance Log No. 277864, which was denied at all levels.

### B. Defendants' Statement.

On March 21, 2022, Defendants Garcia and Maylin monitored the release of Facility A, Building 5 to the yard for morning exercise. Defendants Maldonado, Wallace, Romero, and Hood were also observing the release. Staff undertake routine searches for contraband by having inmates clear Cell Sense Towers, and also conduct physical clothed pat-down searches. Around 8:10 a.m, Garcia and Maylin observed Tamayo attempting to clear the towers. Tamayo failed to clear the towers on three occasions. Each time, the scanner gave a positive audible alert, as well as a red/orange visual alert, which indicated that Tamayo may have possessed a suspected metal item on his person.

Maylin then ordered Tamayo to place any metallic items that were not contraband, such as his jacket, watch, or facial mask, on the cart next to the scanners. He appeared agitated with the instructions Officer Maylin was giving to him, likely due to the multiple failed attempts. In his deposition, Tamayo admitted he was agitated. However, he eventually complied, placing his belongings, facial mask, CDCR jacket, and head cap in the cart next to the detector, and again walked through the towers. Once he cleared the towers, Defendant Garcia called him over for a clothed body search. This was part of the process to prevent contraband from entering the yard, especially if there were issues with the inmate's clearance through the towers.

Tamayo complied, approached Garcia, turned his back towards Garcia, and lifted his arms out from his sides to prepare for the search. Garcia attempted to grab Tamayo's ID card, but it was tied to his left wrist. Garcia asked Tamayo to remove his ID care from his wrist. Tamayo, agitated, pulled the ID off in an abrupt manner. Garcia asked Tamayo if he was okay, to which he replied, "You asked me to take it off didn't you." During the search, Garcia attempted to communicate with Tamayo, and asked why he appeared agitated. Tamayo did not respond, and appeared to be reluctant regarding the routine search process. Despite the search not being over, Tamayo attempted to walk away. Garcia quickly ordered him to stop, and he complied. Garcia told Tamayo that the search was not complete, and he needed to search his boots. Tamayo, still

3

agitated, turned to face Garcia and said, "Really! My boots!" Tamayo, now visibly upset, complied, but instead of taking off the boots, he slid his right boot off onto his toes and kicked it at Garcia. When Garcia asked him to pick up his boot, Tamayo responded, "No! You wanted it, you grab it!" When Garcia again requested that Tamayo pick up his boot, he complied.

After searching Tamayo's right boot, Garcia asked to search his left boot. Tamayo replied, "No! I'm done with this shit!" Garcia then gave Tamayo a clear order to turn around and attempted to effect custody on him, but Tamayo did not turn around. Accordingly, Garcia stepped closer to Tamayo, and grabbed his left wrist. However, Tamayo broke free from Garcia's grasp, stepped forward towards Garcia, and punched him in the abdominal area. To gain compliance, effect custody, and subdue an attacker, Garcia gave an order to, "Get down." Romero also yelled for Tamayo to get down.

Defendants Garcia, Maylin, and Romero then attempted to take Tamayo to the ground in an effort to prevent further injury to staff and Tamayo. However, Tamayo resisted and tried to remain standing. Garcia, Maylin, and Romero tried again to lower Tamayo to the ground and succeeded. Having seen the commotion or heard the order, Maldonado, Hood, and Wallace arrived as the three other officers and Tamayo were on the floor. While on the ground, Garcia placed his right arm on Tamayo's upper back and applied pressure to hold him until he could be secured in restraints. Maylin, feeling that Tamayo was twisting and thrashing, started applying weight to Tamayo's lower back area, and then shifted and held Tamayo's right wrist until he was secured in cuffs. Romero used his knee to put downward pressure on Tamayo's right hamstring area, and then placed Tamayo in handcuffs. Wallace took control of Tamayo's right wrist and held his right arm in place until Tamayo was secured in cuffs. Even after his right arm was cuffed, Tamayo continued pulling away from Wallace's grip. Maldonado, seeing that Tamayo's legs were unrestrained, held Tamayo's ankles until leg irons were applied. Hood arrived and applied pressure to Tamayo's right shoulder area while he thrashed from side to side. Tamayo was eventually placed in cuffs. Garcia suffered an abrasion to his knee as a result of the incident.

4

### III.   LEGAL ISSUES

#### A.   Plaintiff's Position.

Following the Court's Order Partially Granting Defendants' Motion for Summary Judgment (ECF 51), the only claim remaining for trial is Plaintiff's Eighth Amendment excessive-force claim under 42 U.S.C. § 1983 against Defendants Garcia, Romero, Maylin, Hood, Maldonado, and Wallace, arising from the March 21, 2022 use-of-force incident at Pelican Bay State Prison. The principal disputed points of law on that claim are: (1) whether the force used against Plaintiff on March 21, 2022 was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm, in violation of the Eighth Amendment; (2) whether each individual Defendant participated in, or failed to intervene to stop, the use of force in a manner that renders that Defendant liable under § 1983; and (3) whether any Defendant is entitled to qualified immunity based on the facts as ultimately found by the jury (the Court denied qualified immunity at summary judgment because the disputed facts must be resolved before the immunity analysis can be completed, ECF 51 at 16–17).

#### B.   Defendants' Position.

The sole remaining legal issues in this case concerns whether, for each Defendant, the Defendant used excessive force against Plaintiff during the March 21, 2022 incident and is entitled to qualified immunity.  No failure to intervene or stop claim has ever been recognized by this Court.  (ECF Nos. 21 and 24; see also ECF Nos. 23 (Plaintiff's request to only proceed on the claims recognized by the Court in ECF No. 21 and forgo amendment of the First Amended Complaint) and No. 51 at 1 (" Plaintiff Sergio Tamayo, a pro se state prisoner, filed this civil rights lawsuit alleging that Defendants retaliated against him, used excessive force, and violated his right to equal protection….").

### IV.   MOTIONS

- Plaintiff's Motion for Leave to Proceed In Forma Pauperis (ECF 3): granted September 15, 2023 (ECF 13).

- Plaintiff's Motion for Leave to Amend (ECF 17): terminated November 7, 2023 (ECF 18); the Court construed the filing as the First Amended Complaint.

5

- Order of Service and Directing Dispositive Motion (ECF 24, October 7, 2024): the Court ordered service on the six named Defendants and set a dispositive-motion deadline of February 7, 2025.

- Defendants filed their motion for summary judgment on June 23, 2025.  In a February 3, 2026 Order, the Court granted Defendants' summary judgment motion with regard to the retaliation claim and the Equal Protection claim, as Tamayo had failed to exhaust either cause of action.  The Court denied the motion with regard to the excessive force claim because Tamayo had shown that issues of material fact remained as to that claim.  It also denied Defendants' request for qualified immunity, as the evidence supported "inferences that Tamayo did not punch or threaten Garcia, that Defendants used force due to reasons other than a good faith effort to restore order, i.e., their animosity toward Tamayo, and that several officers held Tamayo down while others punched him on the back of the head."  The Court also concluded that those issues of material fact had to be resolved before the Court could determine whether qualified immunity applies, as no reasonable officer under those circumstances could conclude that such conduct was lawful.

- Plaintiff's prior request for appointment of counsel (ECF 40): denied without prejudice (ECF 43) while the MSJ was pending.

- Order Referring Matter for Appointment of Counsel (ECF 54) and Order Appointing Pro Bono Counsel (ECF 55): Glenn Katon was appointed pro bono counsel for Plaintiff pursuant to 28 U.S.C. § 1915(e)(1) and General Order No. 25, and all proceedings were stayed until the further Case Management Conference following the appointment.

There are no pending motions.  Anticipated future motions include motions in limine, any discovery-related motions not resolved by meet-and-confer, a dispositive motion regarding Plaintiff's claims for declaratory and injunctive relief, and Writ of Habeas Corpus ad Testificandum to allow Plaintiff to testify and attend trial.

## V.    AMENDMENT OF PLEADINGS

The parties do not anticipate any further amendment of the pleadings.

## VI.    EVIDENCE PRESERVATION AND PROTECTIVE ORDER

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), including Sections 2.01 and 2.02 and the Checklist for ESI Meet and Confer.

Defendants' counsel represents that they have taken steps to ensure that all relevant evidence is preserved.

## VII.    DISCLOSURES

This action was filed by Plaintiff pro se and was exempt from Rule 26(a)(1) Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(B)(iv). No initial disclosures have previously been exchanged.

### A.    Plaintiff's Position.

Plaintiff requests that although this case was brought by a person in custody without an attorney, Plaintiff now has counsel and the parties would benefit from the exchange of Initial Disclosures, which should be exchanged within 14 days of the Case Management Conference.

### B.    Defendants' Position.

Defendants maintain that this case should remain exempt from Initial Disclosures.

## VIII. DISCOVERY

Discovery taken to date: Plaintiff (then pro se) was deposed on April 16, 2025.  Plaintiff served Requests for Production, Set One, on Defendants, who served their responses on August 12, 2025. No Defendant has been deposed.  The parties do not currently anticipate a need to modify the standard discovery limits imposed by the Federal Rules.

### A.    Plaintiff's Position re Discovery.

Plaintiff anticipates the following further discovery on the surviving excessive-force claim: (1) Depositions of each of the six Defendants and a Rule 30(b)(6) deposition of the CDCR, and (2) subpoenas CDCR A-Yard surveillance system logs and retention records, CDCR 7219 injury documentation, the underlying Rules Violation Report (Log No. 07167965) and related hearing

7

records, Plaintiff's CDCR medical and ADA-accommodation records, and other relevant institutional records. Plaintiff is meeting and conferring with Defendants regarding prior testimony of Defendants and video surveillance footage exists.

**B.      Defendants' Position re Discovery.**

Defendants will take the depositions of additional witnesses as they are discovered. Defendants will also propound written discovery upon Plaintiff.  The Parties have yet to substantively meet and confer about discovery, but Defendants remain willing to do so.

## IX.   CLASS ACTIONS

This case is not a class action.

## X.    RELATED CASES

The parties are not aware of any related cases.

## XI.   RELIEF

Plaintiff seeks noneconomic damages for physical pain and suffering in an amount to be determined by the jury, arising from the March 21, 2022 use of force (including injuries documented on the CDCR 7219 form — facial scrape, blood on face, leg cuts, and a hand cut — and additional injuries testified to at deposition, including head and neck bumps, throat soreness, and rib pain), worsened vision following the incident, and emotional distress and trauma; punitive damages against the individual Defendants as allowed by law for conduct that Plaintiff alleges was malicious and in reckless disregard of his constitutional rights; attorneys' fees and costs under 42 U.S.C. § 1988; and such other relief as the Court deems just and proper.

Defendants seek a judgment against Plaintiff, that Plaintiff take nothing, and that Defendants receive their allowable costs and fees.

## XII.  SETTLEMENT AND ADR

On February 3, 2026, the Court referred the surviving excessive-force claim to the Northern District's Pro Se Prisoner Settlement Program (ECF 51). A settlement conference was held on March 11, 2026 before United States Magistrate Judge Robert M. Illman (Dkts. 52, 53). The matter did not settle.

**XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties do not consent to have a magistrate judge conduct all further proceedings.

**XIV. OTHER REFERENCES**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**XV.  NARROWING OF ISSUES**

The parties are not aware of any issues at this time that can be narrowed by agreement.

**XVI. EXPEDITED SCHEDULE**

Defendants' position is that there is no need for an expedited schedule.

**XVII.  SCHEDULING**

The parties do not agree on a proposed schedule.  Their respective proposed schedules are outlined below:

Plaintiff's Position.

Plaintiff proposes the following schedule, subject to the Court's calendar and to further discussion at the CMC:

Discovery cutoff: September 30, 2026

Pretrial conference: November 2, 2026

Trial: November 30, 2026

Defendants' Position.

Plaintiff, who is 47 years old, is not eligible for parole consideration until October 2034.

Therefore, Defendants propose the following schedule:

| December 18, 2026 | Last day to complete non-expert discovery. |
|---|---|
| January 29, 2027 | Last day to designate any experts and provide expert reports. |
| February 19, 2027 | Last day to designate any rebuttal experts and provide rebuttal expert reports. |
| March 19, 2027 | Last day to complete expert discovery. |
| June 23, 2027 | Pretrial conference. |
| August 16, 2027 | First day of trial and jury selection. |

9

**XVIII. TRIAL**

Plaintiff and Defendants demand trial by jury. The expected length of trial is four to five full trial days, involving Plaintiff and the six Defendants as parties. Plaintiff's counsel will separately raise with the Court at the CMC, any ADA accommodations that may be necessary for Plaintiff, who is visually impaired.

**XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiff Sergio Tamayo has filed his Certification of Interested Entities or Persons pursuant to Civil Local Rule 3-15. Plaintiff is not aware of any persons, firms, partnerships, corporations, or other entities other than the parties that have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.  Defendants assert that there are no non-party interested entities or persons.

**XX.  PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XXI. OTHER MATTERS**

The Parties are not otherwise aware at this time of matters that may facilitate the just, speedy and inexpensive disposition of this matter.

Respectfully submitted,

KATON.LAW

Dated: July 17, 2026          By:  _/s/     Glenn Michael Katon_
                                    Glenn Michael Katon
                                    *Attorney for Plaintiff Sergio Tamayo*

10

Dated: July 17, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General

*/s/ Michael Quinn*
MICHALE J. QUINN
Deputy Attorney General
*Attorneys for Defendants Garcia, Maylin, Romero, Hood, Maldonado, and Wallace*

## ATTESTATION

Pursuant to General Order 45, Section X.B, I hereby attest that I have obtained consent to file for all signatures indicated by the "/s/" within this electronically filed document.

  /s/ *Michael J. Quinn*
Michael J. Quinn

## **ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

[In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____

  _____
The Honorable Noël Wise
United States District Court Judge

SF2024402752
45149396.docx

11

Joint Case Management Statement and [Proposed] Order (5:23-cv-01749-NW)

# CERTIFICATE OF SERVICE

Case Name:   **_S. Tamayo (AY9771) v. Garcia, et al._**        No.   **5:23-cv-01749-NW**

I hereby certify that on <u>July 17, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 17, 2026</u>, at San Francisco, California.

|  |  |
|---|---|
| H. Su | _/s/ H. Su_ |
| Declarant | Signature |

SF2024402752
45150295.docx