GLENN KATON (SBN 281841)
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
Telephone: (510) 463-3350
Email: gkaton@katon.law

**Attorney for Plaintiff**
**SERGIO TAMAYO**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

**SERGIO TAMAYO,**

Plaintiff,

v.

**J. GARCIA, et al.,**

Defendants.

**Case No. 5:23-cv-01749-NW**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT TESTIMONY OF SHILO BACCA (DAUBERT MOTION); MEMORANDUM OF POINTS AND AUTHORITIES**

Date: October 28, 2026, at 11:00 a.m.
Courtroom 3, 5th Floor
Hon. Noël Wise

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 28, 2026, at 11:00 a.m., or as soon thereafter as the matter may be heard, Plaintiff Sergio Tamayo will and hereby does move the Court for an order excluding the expert testimony of Correctional Captain Shilo Bacca.

This Motion is made on the following grounds:

1. **Reliance on records withheld from Plaintiff.** Capt. Bacca's opinions rest on CDCR records that the California Department of Corrections and Rehabilitation (CDCR) improperly withheld from Plaintiff in response to Plaintiff's Rule 45 subpoena, and that Plaintiff has had no opportunity to examine or test. The Court should preclude Bacca from relying on those materials under Federal Rules of Evidence 702, 703, and 403, as an exercise of its gatekeeping authority and to prevent unfair prejudice. Further, Bacca should be considered a retained expert under Federal Rule of Civil Procedure 26(a)(2)(B) and his reliance on undisclosed facts and data

requires exclusion under Rule 37(c)(1).

2. **Medical, physiological, and forensic opinions beyond his qualifications.** Capt. Bacca is a correctional officer with no medical, physiological, or forensic-pathology training. He offers opinions on positional asphyxia, airway patency, the significance of the ability to speak, the significance of the presence or absence of petechiae and laryngeal trauma, and injury causation. He is not qualified to offer these opinions under Federal Rule of Evidence 702.

3. **Impermissible legal conclusions.** Capt. Bacca opines that the force was "objectively reasonable" and complied with "constitutional standards," which are legal conclusions that invade the province of the Court and the jury and are inadmissible under Federal Rule of Evidence 704.

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Glenn Katon and accompanying exhibits, the pleadings and records on file, and argument as may be presented at the hearing.

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))

1. Whether the Court should preclude Capt. Bacca from relying on the subpoenaed CDCR records that were withheld from Plaintiff, under Federal Rules of Evidence 702, 703, and 403, because Plaintiff cannot examine or test the bases of opinions built on those records. In the alternative, whether the Court should exclude his opinions under Federal Rule of Civil Procedure 37(c)(1) because he is a retained expert under Rule 26(a)(2)(B).

2. Whether the Court should exclude, under Rule 702, Bacca's opinions on positional asphyxia, airway patency, the significance of vocalization, the significance of the absence of petechiae or laryngeal trauma, and injury causation, where he has no medical, physiological, or forensic-pathology qualifications.

3. Whether the Court should exclude, under Rule 704, Bacca's opinions that the force was "objectively reasonable" and complied with "constitutional standards."

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is a 42 U.S.C. § 1983 excessive-force action. Plaintiff Sergio Tamayo, alleges that on

March 21, 2022, while incarcerated at Pelican Bay State Prison, Defendant correctional officers slammed him to the ground without provocation, punched him repeatedly, applied knee pressure to his neck, and placed him in a hold that impeded his breathing, while he repeatedly said he could not breathe. Defendants have designated Correctional Captain Shilo Bacca, a CDCR employee, to opine that the officers used no excessive or unnecessary force. Bacca's testimony should be excluded and limited on three independent bases.

First, his opinions are built in part on CDCR review-and-adjudication records that Plaintiff has never seen, notwithstanding his subpoena to CDCR demanding all records relating to the incident between Defendants and Plaintiff. Bacca's report refers to the use-of-force manager's reviews (CDCR 3011 and 3012), the internal-affairs allegation-review forms (CDCR 3034, 3035, and 3036), the inmate-interview worksheet and report of findings (CDCR 3013-2 and 3014), and the Facility A post orders — all of which were responsive to Plaintiff's Rule 45 subpoena but were never produced. Because Plaintiff cannot examine or test the bases of opinions grounded in those withheld records, the Court should preclude Bacca from relying on them, under its Rule 702 gatekeeping authority and Rules 703 and 403. The point is sharpened here because the expert, the Defendants, and the agency that withheld the records are all part of CDCR. Thus, CDCR controls and withheld the factual foundation of Bacca's report, prepared for Defendants, all of whom were employed by CDCR at the time of the incident and all but one of whom are so employed to this day.

Second, Bacca has no medical training, yet he opines on several matters that require such expertise. He claims that Plaintiff did not suffer positional asphyxia, that Plaintiff's airway "was open and patent," that Plaintiff's ability to speak "conclusively demonstrates" unobstructed breathing, that the absence of petechiae and laryngeal trauma disproves choking, and that Plaintiff's injuries are "consistent with a controlled physical takedown." These are medical, physiological, and forensic-pathology opinions that a correctional officer is not qualified to give.

Third, Bacca opines that the force Defendants used on Plaintiff was "objectively reasonable" and complied with "constitutional standards," which are impermissible legal conclusions. Rules 702 and 704 apply to every expert, retained or non-retained, and bar this

testimony.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The incident and Plaintiff's claims.

Plaintiff alleges that on March 21, 2022, during morning yard release at Facility A in Pelican Bay, Officer Garcia slammed him to the ground without provocation, and that several officers struck him, applied knee pressure to his neck, and placed him in a chokehold that impeded his breathing. Plaintiff reported contemporaneously and in his grievance, interview, and deposition that officers beat him, placed their knees on his neck and choked him to the point that he could not breathe, and that he said "I can't breathe" while officers continued applying pressure. (Bacca Report (Katon Decl. Ex. A) at 11, 18.)

### B. Capt. Bacca's designation as an expert.

Capt. Bacca is a CDCR correctional captain. His disclosed background is in correctional use-of-force review and internal affairs: he describes approximately thirteen years in supervisory and Office of Internal Affairs roles, service as a Code 1/Code 2 responder and incident commander, and instructor certifications in CDCR Use of Force and POST. (Bacca Report (Katon Decl. Ex. A) at 1–2.) He discloses no medical, nursing, emergency-medical, physiological, biomechanical, or forensic-pathology training. (*Id.*)

Defendants have provided Bacca's report as a non-retained expert disclosure under Federal Rule of Civil Procedure 26(a)(2)(C). The Ninth Circuit distinguishes a party's designated testifying expert, who must serve a written report under Rule 26(a)(2)(B), from an employee witness with expertise who testifies only to acts performed in the ordinary course of his duties. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212–13 (9th Cir. 2008). The proper designation turns on the source of the opinion: a report is required where the opinion "is based on information provided by others" rather than on "percipient observations" of the events in issue. *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012) (quoting *United States v. Sierra Pacific Indus.*, 2011 WL 2119078, at *4 (E.D. Cal. 2011)).

Capt. Bacca falls on the reporting side of that line. He has no percipient knowledge of the March 21, 2022 incident; his opinions rest entirely on his review of records assembled for this

litigation. His report confirms that his role is review and evaluation — he "oversee[s] use of force reviews at the Departmental Executive Review Committee (DERC) level," and his instructor duties include critiquing reports and identifying uses of excessive or unnecessary force. (Bacca Report (Katon Decl. Ex. A) at 1–2.) He was in fact deposed as a designated expert on use-of-force review in *Messiah v. Garcia Lara*, where the court held that prison employees so designated are subject to full expert discovery and that their prior fact depositions were no substitute for their expert testimony. 351 F.R.D. 420 (N.D. Cal. 2026); (Bacca Report (Katon Decl. Ex. A) at 2 (listing the *Messiah* deposition).) A records-reviewing use-of-force opinion witness like Capt. Bacca is therefore a reporting expert for whom a full Rule 26(a)(2)(B) report — including "the facts or data considered" — was required, not a witness entitled to the lighter Rule 26(a)(2)(C) disclosure. *See In re Application of Republic of Ecuador*, 280 F.R.D. at 514; *cf. Prieto v. Malgor*, 361 F.3d 1313, 1318–19 (11th Cir. 2004) (employee officer who reviewed records and opined on use of force, with no personal knowledge, required to serve a full Rule 26(a)(2)(B) report).

**C. Plaintiff's Rule 45 subpoena to non-party CDCR.**

CDCR is not a party to this action; the Defendants are individual correctional officers. On August 6, 2026, Plaintiff served a subpoena under Federal Rule of Civil Procedure 45 on the CDCR Custodian of Records, commanding production by September 1, 2026. (Subpoena (Katon Decl. Ex. B).) Request No. 1 demanded: "All Records of the Incident, including reports, interviews, transcripts, notes, photos, videos, emails, messages, or texts." (Subpoena, Ex. A, Req. No. 1.) The subpoena defined "Incident" as the altercation between Defendants and Plaintiff and "Records" as "information stored in any form, within the broadest interpretation of Federal Rule of Civil Procedure 45." (*Id.*)

**D. The records Capt. Bacca relied on that were withheld from Plaintiff.**

The "Materials Considered" section of Bacca's report lists the records and data he relied on. (Bacca Report (Katon Decl. Ex. A) at 3–4.) CDCR's production in response to the subpoena consisted of two items: a six-page internal-affairs "Inquiry Report Summary" (Bates AGO 001–AGO 006, designated Attorney Eyes Only), and the 56-page CDCR Incident Report Package for Incident Log No. 35973 (the "ERMS File"). (See Katon Decl. ¶ 5.)

Certain other records Bacca relied on — the Office of Grievances and Office of Appeals decisions (Log Nos. 277867 and 281744) and the Del Norte County District Attorney Reject/Detainer Removal Memorandum (6/6/2022) — were not produced by CDCR in response to the subpoena, but Defendants separately placed them into the record in support of their motion for summary judgment. Plaintiff therefore treats those records as produced for purposes of this Motion.

The following records, by contrast, were relied on by Bacca, fall squarely within Request No. 1 of the subpoena, and were not provided in CDCR's production or in any filing:

- CDCR Form 3010 Incident Commander's Review/Critique (3/22/2022)
- CDCR Form 3011 (Manager's Review – First Level, 3/25/2022);
- CDCR Form 3012 (Manager's Review – Second Level, 3/28/2022);
- CDCR Form 3013-2 (Inmate Interview for Allegation Worksheet, 7/11/2022);
- CDCR Form 3014 (Report of Findings – Inmate Interview, 3/13/2023);
- CDCR Form 3034 (IERC Allegation Review, 4/4/2023);
- CDCR Form 3035 (IERC Review & Further Action Recommendation);
- CDCR Form 3036 (IERC Critique and Qualitative Evaluation); and
- PBSP Post Orders for Facility A (A Security Patrol #1 (261201), A Yard Officer #2 (261239), A Yard Officer #4 (261241), A5 Floor #2 (261289), A8 Floor #1 (261294), A8 Floor #2 (261295)).
- PBSP AIMS Inquiry Closure Memorandum (2/23/2023)

**E. Capt. Bacca's opinions.**

Notwithstanding his lack of any medical training, in a section titled "Rebuttal of Choking and Positional Asphyxia Claims," Bacca opines that Plaintiff's choking and positional-asphyxia allegations "are wholly unsupported by the record," that staff applied "no neck restraints, chokeholds, or laryngeal compression," and that: "IP Tamayo was actively speaking and yelling during the ground restraint. Vocalization conclusively demonstrates that the airway was open and patent." (Bacca Report (Katon Decl. Ex. A) at 18.) In a section titled "Correlation of Medical Evidence," he opines that the medical findings "are consistent with a controlled physical takedown and ground stabilization on a concrete yard surface," and that:

> These documented minor injuries do not support IP Tamayo's claims of being choked, stomped, or subjected to closed fist strikes by multiple officers. IP Tamayo presented zero soft-tissue neck swelling, petechiae, laryngeal trauma, bone fractures, concussions, or loss of consciousness, and required no sutures or acute medical interventions.
>
> (*Id.*)

Bacca further opines that "the defendants did not violate the CDCR Use of Force policy" "none of the involved officers used unnecessary or excessive force" (*id.* at 16). He concludes that "all involved correctional staff acted in full accordance with" CCR Title 15 and the DOM (Department Operations Manual) "and constitutional standards," and that "[t]he force used … was objectively reasonable and necessary to overcome active assaultive resistance" (*id.* at 19).

## III. LEGAL STANDARD

**Expert qualification and reliability.** Federal Rule of Evidence 702 permits opinion testimony by a witness "qualified as an expert by knowledge, skill, experience, training, or education" only where "the proponent demonstrates to the court that it is more likely than not that" the testimony rests on "sufficient facts or data," is "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The trial court serves a "gatekeeping" role and must "ensure that any and all scientific testimony … is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). That obligation "applies to all expert testimony," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), and is committed to the court's "broad discretion," *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). An expert is qualified only within the field of his demonstrated expertise. *See Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 986 (C.D. Cal. 1996).

**Bases and foundation of an expert's opinion.** Expert opinion is admissible only on an adequate, disclosed foundation, and the burden of establishing that foundation is on the proponent: Rule 702 requires the proponent to "demonstrate[] to the court that it is more likely than not" that the opinion is "based on sufficient facts or data." Fed. R. Evid. 702. The expert-report requirement enforces the same principle at the disclosure stage: a retained expert's report must contain "a

complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). The report must affirmatively set out that foundation; it is the proponent's burden to lay it, not the opponent's to reconstruct it. The court's gatekeeping duty includes "vetting under Rule 703 the bases underlying the expert's testimony." *United States v. W.R. Grace*, 504 F.3d 745 (9th Cir. 2007). Where the factual foundation has not been disclosed to, and cannot be examined by, the opposing party, the opinion rests on no foundation the court or the adversary can test, and may be excluded under Rules 702, 703, and 403. *See S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv*., 257 F.R.D. 607, 616 (E.D. Cal. 2009).

**Expert disclosure.** A retained expert or a party's employee "whose duties … regularly involve giving expert testimony" must serve a written report containing, among other things, "the facts or data considered by the witness in forming" the opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). A non-retained expert need only be disclosed with "the subject matter" of the expected testimony and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Where a party fails to provide information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). That sanction is "self-executing" and "automatic," and "the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001).

## IV. ARGUMENT

### A. Capt. Bacca should be precluded from relying on the subpoenaed records that were withheld from Plaintiff.

**1. Bacca's opinions rest on records Plaintiff has never been able to examine.** Bacca's "Materials Considered" include the CDCR manager's review, internal-affairs, inmate-interview, and findings records, and the Facility A post orders, identified in Section II.D, above, records responsive to Request No. 1 of Plaintiff's Rule 45 subpoena that CDCR never produced and that appear nowhere in the case record. Plaintiff has thus had no opportunity to review the very

documents on which Bacca built his review-and-adjudication opinions, to test whether those documents support his conclusions, or to cross-examine him about them. Rule 705 presumes that an expert's undisclosed bases can be probed "on cross-examination." That safeguard is nullified where the materials were never produced.

**2. The Court should preclude Bacca's reliance on undisclosed records under Rules 702, 703, and 403.** This relief is an ordinary evidentiary ruling within the Court's gatekeeping discretion, not a discovery sanction, and it requires no finding of contempt or bad faith. A court's gatekeeping obligation is to "ensure that any and all … testimony … is not only relevant, but reliable," *Daubert*, 509 U.S. at 589; *Kumho Tire*, 526 U.S. 137, and to "vet[] under Rule 703 the bases underlying the expert's testimony," *W.R. Grace*, 504 F.3d 745. Neither Plaintiff nor the Court can perform that inquiry when the bases have been withheld. "The risk of unfair prejudice is substantial" where an opinion's "qualifications, methods, and reasoning have not been adequately established." *See Jensen v. EXC, Inc.*, 82 F.4th 835, ___ (9th Cir. 2023).

The institutional posture compounds the prejudice. Discovery of the materials an expert relied on exists to protect "the independence of the expert's thinking" and to afford "a fair opportunity to expose whatever weaknesses, unreliabilities, or biases might infect" his opinions. *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995). Here the expert is an employee of CDCR, the Defendants are employees of CDCR, and CDCR is the entity that withheld the records. Allowing Defendants to put before the Court and jury the opinions of their own institution's employee, grounded in records their own institution withheld from Plaintiff, is precisely the one-sided and untestable presentation that Rules 702, 703, and 403 forbid. The Court should preclude Bacca from testifying at trial as it would be impossible to discern the extent to which his opinions rely on any record identified in Section II.D, above, that was not produced to Plaintiff.

**3. In the alternative, if Capt. Bacca is a retained expert, Rule 37(c)(1) requires exclusion.** As shown above (§ II.B), Capt. Bacca is a retained expert subject to Rule 26(a)(2)(B): he has no percipient knowledge of the incident and offers only a records-based evaluation, which places him on the reporting side of the line drawn by the Ninth Circuit and the courts of this district. *Torres*, 548

F.3d at 1212–13; *In re Application of Republic of Ecuador*, 280 F.R.D. at 514; *Dagdagan*, 263 F.R.D. at 636–37. A retained expert's report must contain "the facts or data considered by the witness in forming" his opinions, Fed. R. Civ. P. 26(a)(2)(B)(ii), and his testimony is confined to the subjects the report discloses, *Cotton ex rel. McClure v. City of Eureka*, 860 F. Supp. 2d 999, 1023–24 (N.D. Cal. 2012). Defendants did not produce the records Bacca relied on (§ II.D), so the required foundation was neither disclosed nor made examinable. An incomplete disclosure "undermines [the opposing party's] ability to meaningfully depose or cross-examine [the expert] regarding … the facts or data he considered." *Pineda v. City & Cnty. of San Francisco*, 280 F.R.D. 517, 522 (N.D. Cal. 2012); *see Olson v. Montana Rail Link, Inc.*, 227 F.R.D. 550, 553 (D. Mont. 2005) (precluding reliance on data "not included and spelled out in [the] … disclosure"). Exclusion under Rule 37(c)(1) is "self-executing" and "automatic," and Defendants bear the burden to prove the failure "substantially justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001); *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740–41 (9th Cir. 2021). They cannot carry that burden: the prejudice is acute and uncurable without reopening expert discovery, *Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1267 (D. Ariz. 2020); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1068 (C.D. Cal. 2010); and absent a request for lesser sanctions, courts apply Rule 37(c)(1)'s default exclusion, *Palos v. United States*, 800 F. Supp. 3d 1075, 1083 (C.D. Cal. 2025).

**4. The subpoena non-production frames the unfairness; Plaintiff does not seek to sanction CDCR.** Plaintiff's relief is directed at the admissibility of Defendants' expert evidence, not at punishing non-party CDCR. Plaintiff therefore does not seek contempt under Rule 45(g), which is the mechanism for sanctioning a non-party and ordinarily requires a prior order compelling compliance. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983). That CDCR's records were formally demanded by subpoena and withheld is relevant because it confirms the materials were discoverable and that Plaintiff diligently sought them — underscoring the unfairness of allowing Defendants' CDCR-employee expert to rely on them while Plaintiff cannot.

**B. Capt. Bacca is not qualified to offer medical, physiological, or forensic-pathology opinions.**

Rule 702's qualification requirement applies to every expert, retained or non-retained. A use-of-force expert without medical training cannot offer medical-causation or physiological opinions. In *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1186 (C.D. Cal. 2015), a § 1983 excessive-force case, the court held that a law-enforcement use-of-force expert "who does not have any medical credentials or experience, is not qualified to proffer … opinions[] which speak to [the] alleged cause of death," and that he "may not testify as to the medical consequences of the use of [force]." The court's conclusion was categorical: the witness is not an expert in "medicine, and he thus cannot proffer opinions that rely on any such purported expertise." *Id.* A witness "who … had no training in" medicine is "not qualified to testify as [an] expert on the issue of … causation." *Sanderson*, 950 F. Supp. at 981.

Bacca discloses no medical training whatsoever. (Bacca Report (Katon Decl. Ex. A) at 1–2.) Yet he opines that Plaintiff did not suffer positional asphyxia; that Plaintiff's "airway was open and patent"; that "[v]ocalization conclusively demonstrates" unobstructed breathing; that the absence of "petechiae, laryngeal trauma, [or] … neck swelling" shows Plaintiff was not choked; and that Plaintiff's injuries "are consistent with a controlled physical takedown." (*Id.* at 18.) Whether a person suffered positional or compression asphyxia, whether an airway was "patent," what the ability to vocalize proves about airway obstruction, what the presence or absence of petechiae or laryngeal trauma signifies, and what mechanism caused a given injury are quintessentially medical and forensic-pathology questions requiring exactly the credentials Bacca lacks. Under *Valtierra*, *Sanderson*, and *Hyer*, these opinions must be excluded.

**C. Capt. Bacca may not offer legal conclusions.**

Although Rule 704(a) provides that an opinion "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), the Ninth Circuit has consistently held that the rule does not authorize expert opinions on ultimate issues of law. "[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law," and "instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *accord Elsayed Mukhtar*

*v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002), overruled on other grounds by *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014). An expert may not "tell the jury what result to reach." *United States v. Diaz*, 876 F.3d 1194, 1196 (9th Cir. 2017).

In the excessive-force context, a use-of-force expert "may not opine on whether the defendants' use of force was reasonable under the circumstances[,] because this is … an opinion on an ultimate issue of law that risks usurping the jury's province." *Ochoa v. Cnty. of Kern*, 628 F. Supp. 3d 1006, 1017–18 (E.D. Cal. 2022). As *Valtierra* held, "[w]hether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them is … a question for the jury or, if no material facts are in dispute, for the Court," not for an expert. *Valtierra*, 99 F. Supp. 3d at 1196–97.

Bacca's opinions that the force was "objectively reasonable" and that the officers acted "in … accordance with … constitutional standards" (Bacca Report (Katon Decl. Ex. A) at 19) are textbook legal conclusions, phrased in the exact language of the controlling constitutional standard. They must be excluded.

## V. CONCLUSION

For the foregoing reasons, the Court should preclude Capt. Bacca from testifying at trial because his report relies on numerous records improperly withheld during discovery, he would provide medical opinions for which he has no education or experiential basis to provide, and he would give testimony of legal opinions that are the province of the Court.

Respectfully submitted,

KATON.LAW

/s/ Glenn Katon
Glenn Katon

COUNSEL FOR PLAINTIFF TAMAYO